Lori V. Berke (#015628)
Jody C. Corbett (#019718)
**BERKE LAW FIRM, PLLC**
1601 N. 7th Street, Suite 360
Phoenix, AZ 85006
Phone: (602) 254-8800
Fax: (602) 254-8808
lori@berkelawfirm.com
jody@berkelawfirm.com
Attorneys for Defendants City of Phoenix, City of Phoenix Police Chief Jeri Williams and Officer Eric Gomez

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| David Saccoccio,<br><br>    Plaintiff,<br><br>vs.<br><br>City of Phoenix, a municipal corporation; Jeri Williams, Chief of Police of the City of Phoenix Police Department,[1]<br><br>    Defendants. | Case No. CV-20-1141-PHX-DJH<br><br>**CITY OF PHOENIX'S MOTION TO DISMISS** |

Pursuant to Fed. R. Civ. P. 12(b), Defendant City of Phoenix ("Defendant"), through undersigned counsel, moves to dismiss all of Plaintiff David Saccoccio's ("Plaintiff") claims in his Amended Complaint against the City of Phoenix. This motion is supported by the following Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff alleges in his Amended Complaint that on May 31, 2020, following days of unrest, Governor Ducey issued an emergency order imposing an 8:00 pm curfew on all

---

[1] Phoenix Police Officer Eric Gomez is also named as a defendant in the body of the Amended Complaint, but his name has been omitted from the caption.

1

residents statewide. (Doc. 18, ¶ 19). Beginning at approximately 5:00 pm on May 31, 2020, and continuing for the next few hours, Plaintiff, along with other individuals, participated in a peaceful protest in downtown Phoenix. (Doc. 18, ¶¶ 20-28. Plaintiff alleges that "intent on exercising their First Amendment right to assemble in the face of what they . . . believed to be an unconstitutional curfew," Plaintiff and other protest participants walked northbound on 7th Street toward the freeway, and as they approached Roosevelt Street, police officers formed a line across 7th Street, cutting off the route. (Doc. 18, ¶¶ 25-27). As the protestors approached the line of police officers, they began kneeling on the ground with their hands up, chanting "hands up don't shoot." (Doc. 18, ¶ 28). Plaintiff alleges that police responded by "launching a series of cannisters of tear gas into the middle of the crowd" and firing tear gas and "less lethal" ammunition such as "rubber bullets" at protestors. (Doc. 18, ¶¶ 28-29). Plaintiff alleges he and other protestors ran south to evade the pepper spray and rubber bullets, and then had to go eastbound into the Garfield historic neighborhood. (Doc. 18, ¶¶ 30-33).

Plaintiff claims he and a small group of protestors he was with saw a group of Phoenix police officers moving toward them, and when the protesters reached a fence and had nowhere to go, they stopped and put their hands up to "surrender." (Doc. 18, ¶¶ 38-39). As Plaintiff attempted to surrender, officers launched tear gas at them. (Doc. 18, ¶ 39). Plaintiff alleges he then attempted to scale the fence, and after being unable to do so, turned around and started to put his hands up to surrender. (Doc. 18, ¶ 39). He alleges that as he was "putting his hands up, he was shot at point-blank range by Phoenix Police Officer Eric Gomez with what felt like a real bullet." (Doc. 18, ¶ 42).

Plaintiff claims that despite requesting medical attention, he did not receive medical treatment until several hours later when the Phoenix Fire Department responded to the scene and cleaned his open wound. (Doc. 18, ¶¶ 43-46). He was then brought to a Phoenix Police precinct so that his wound could be photographed, after which police transported him to a hospital emergency room where he was released from custody and advised he would receive a criminal citation in the mail. (Doc. 18, ¶¶ 46-47). Plaintiff alleges he was

diagnosed with a fractured radial bone in his arm and underwent surgery for it the following day. (Doc. 18, ¶ 48).

## II. LEGAL ARGUMENT

### A. Legal Standard for Dismissal of Claims.

Under federal law, in order to state a claim upon which relief can be granted, a complaint must contain sufficient factual allegations to support the claims asserted and not just "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678-79. A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Nor does a complaint suffice if it tenders "naked assertion[s] devoid of 'further factual enhancement.'" Id. (citation omitted). The plaintiff must allege enough facts to state a claim for relief that is plausible on its face. Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008) (quoting Twombly, 550 U.S. at 555). Causes of action that fail to state a claim upon which relief can be granted are subject to dismissal under Fed. R. Civ. P. 12(b)(6).

### B. Plaintiff's Second Claim for Relief Fails to State a Claim Under 42 U.S.C. § 1983 for Municipal Liability under *Monell* Against the City of Phoenix.

In his Second Claim for Relief, Plaintiff alleges that the City of Phoenix is liable to him under 42 U.S.C. § 1983 because it failed to properly "train, supervise or discipline its employees." (Doc. 18, ¶ 73). To state a claim against a municipality for failure to adequately train or supervise its employees regarding their legal duty to avoid violating citizens' rights such that it rises to the level of a "policy or custom" that is actionable under Section 1983, a complaint must allege facts demonstrating deliberate indifference by the municipality. Connick v. Thompson, 563 U.S. 51, 61 (2011). To demonstrate deliberate indifference, a complaint must allege facts showing that the municipality had "notice that a course of training is deficient in a particular respect," because without such notice, a municipality "can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Id. at 62. Finally, to properly allege a claim for

failure to supervise, there must be facts alleged to demonstrate that the supervision was "sufficiently inadequate" to amount to "deliberate indifference." Dougherty, 654 F.3d at 900. It is "ordinarily necessary" to allege facts demonstrating a pattern of similar constitutional violations by untrained employees to demonstrate deliberate indifference for purposes of showing a claim for failure to train and supervise. Connick, 563 U.S. at 62; see also Cannon v. City of Petaluma, 2012 WL 1183732, at *19 (N.D. Cal. 2012) (ruling that the plaintiff's allegations relating "solely to his own, isolated experiences" were insufficient to state a claim for failure to train or supervise); Haugen v. Brosseau, 351 F.3d 372, 393 (9th Cir. 2003), reversed on other grounds sub nom. by Brosseau v. Haugen, 543 U.S. 194 (2004) (holding that a "single failure to discipline" officers, by itself, cannot give rise to a municipality's liability under Monell). Without alleging a pattern of similar conduct, a plaintiff must allege facts showing that the inadequacy in this area of training was so obvious that the defendant municipality should have known that unlawful conduct by its officers was predictable. See Connick, 563 at 63–64; Bryan County, 520 U.S. at 409 ("[t]he likelihood that [a] situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that [the failure to train] reflected 'deliberate indifference' to the obvious consequence of the policymakers' choice—namely, a violation of a specific constitutional or statutory right").

Plaintiff's Amended Complaint contains no allegations to support a claim for improperly training, supervising, and/or disciplining Officer Gomez or any other City of Phoenix police officer. The Amended Complaint fails to allege any specific facts to sufficiently allege a claim for failure to train, supervise, and/or discipline Officer Gomez by demonstrating a pattern of similar constitutional violations (i.e. using excessive force) that could establish deliberate indifference by the City of Phoenix. The Amended Complaint only refers to a vague "history" of the City of Phoenix Police Department using "tear-gas," "attempting to 'corral' protestors," "targeting protestors," and failing to discipline its officers for excessive force. While the Amended Complaint alleges "upon information and belief" that an assistant chief with the City of Phoenix Police Department trained with the

4

Israeli military and that the Phoenix Police Department uses tactics developed by the Israeli army, these vague allegations are insufficient to state a claim upon which relief can be granted. See, e.g., Van Buren v. Walmart, Inc., 2020 WL 1064823, at *4 (D. Md. Mar. 5, 2020) (holding that "information and belief" pleadings that allege no more than conclusions are insufficiently pleaded under Rule 8). There are no allegations in the Amended Complaint of other instances in which the Phoenix Police Department was found to have used excessive force against protestors sufficient to demonstrate a pattern of similar constitutional violations by City of Phoenix police officers. Instead, the Amended Complaint contains only legal conclusions that are insufficient to properly allege this claim. See Iqbal, 556 U.S. at 678-79. Therefore, Plaintiff's Amended Complaint fails to state a claim against the City of Phoenix in the Second Claim for Relief upon which relief can be granted and should be dismissed.

### C. Plaintiff's Third Claim for Relief Should Be Dismissed Pursuant to A.R.S. § 12-820.05(B).

In his Third Claim for Relief, Plaintiff alleges a claim for assault and battery under Arizona law against the City of Phoenix only pursuant to the doctrine of *respondeat superior* based on alleged conduct of Phoenix Police Officer Eric Gomez. (Doc. 18, ¶¶ 83-89). Under A.R.S. § 12-820.05(B), "[a] public entity is not liable for losses that arise out of and are directly attributable to an act or omission determined by a court to be a criminal felony by a public employee unless the public entity knew of the public employee's propensity for that action." A felony conviction is not a prerequisite to application of immunity under A.R.S. § 12-820.05. Indeed, in State v. Heinze, 196 Ariz. 126, 130, 993 P.2d 1090, 1094 (App. 1999), the Arizona Court of Appeals held that a similar statute did not require a criminal conviction. In Heinze, the court analyzed whether the State had a duty to indemnify a former State employee who was alleged to have sexually harassed other employees. Id. at 128, ¶ 1, 993 P.2d at 1092. The statute at issue in Heinze excluded from state insurance coverage "an act or omission determined by a court to be a felony." Id. at 130, ¶16, 993 P,2d at 1094. The Court of Appeals held that because the statute did not

specify that the state employee must have been <u>convicted</u> of a felony, or exclude only losses arising from acts or omissions determined by a <u>criminal</u> court to be a felony, a civil court could make the determination that the alleged actions by the employee constituted a felony. <u>Id.</u> at 130, 993 P.2d at 1094. <u>See also</u>, <u>McGrath v. Scott</u>, 250 F. Supp. 2d 1218, 1234 (D. Ariz. 2003) (holding that the immunity in A.R.S. § 12–820.05(B) applied despite the lack criminal court finding that the officer's action constituted a felony).

      Under A.R.S. §13-1203, a person commits the crime of misdemeanor assault by:

    1.    Intentionally, knowingly or recklessly causing any physical injury to another person; or

    2.    Intentionally placing another person in reasonable apprehension of imminent physical injury; or

    3.    Knowingly touching another person with the intent to injure, insult or provoke such person.

Under A.R.S. § 13-1204, a person commits an aggravated assault, which is a felony, if he commits an assault and "causes serious physical injury to another." Plaintiff alleges that that Officer Gomez caused serious physical injury to him by shooting him with a "less lethal" munition and that Officer Gomez and other Phoenix police officers caused him "to be in reasonable apprehension of physical harm." (Doc. 18, ¶¶ 84-85). There is no allegation in Plaintiff's Amended Complaint that the City of Phoenix knew of a propensity on the part of Officer Gomez to commit aggravated assault. Therefore, the City of Phoenix is immune from suit under Arizona law for Plaintiff's Third Claim for Relief and that claim should be dismissed.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

### D. Plaintiff's Fourth Claim for Relief (First)[2] – Negligence against the City of Phoenix – Should Be Dismissed on Multiple Bases.

#### 1. A Claim for Negligence Against a Public Entity Cannot be Based on the Alleged Excessive Force by a Police Officer.

In his Fourth Claim for Relief (First), Plaintiff alleges a claim for negligence against the City of Phoenix only pursuant to the doctrine of *respondeat superior* based on alleged conduct of Phoenix Police Officer Eric Gomez, Phoenix Police Chief Jeri Williams and other unknown police officers. (Doc. 18, ¶¶ 90-97). Plaintiff alleges that Officer Gomez "violated his duty of care by deploying a less-lethal munition from point blank range," causing Plaintiff injury. (Doc. 18, ¶ 93). Plaintiff also alleges that Chief Williams "violated her duty of care by approving a reckless operations plan that created a high likelihood of injury to Plaintiff." (Doc. 18, ¶ 92). Plaintiff also alleges that "[o]ther unknown officers violated their respective duties of care by indiscriminately deploying tear gas, rubber bullets, and other 'less lethal' munitions that fell below the standard of care for police officers . . . ." (Doc. 18, ¶ 94). All of the allegations upon which Plaintiff bases his negligence claim stem from an alleged use of excessive physical force by a police officer against Plaintiff.

The Arizona Supreme Court has held that a claim for negligence cannot be based on an alleged use of excessive force by a police officer. See Ryan v. Napier, 245 Ariz. 54, 60–61, ¶¶ 16-26, 425 P.3d 230, 236–37 (2018) (holding that "negligent use of intentionally inflicted force" is not a cognizable claim). In Ryan, the Supreme Court reasoned that a claim for negligence could not be based on a police officer's use of excessive force because use of force is an intentional act and "negligence and intent are mutually exclusive grounds for liability." Id. at 60, ¶ 20, 425 P.3d at 236. Further, the Arizona Supreme Court held that allowing a plaintiff to bring a claim for negligence against a public entity based on a

---

[2] Plaintiff's Amended Complaint contains two sections titled "Fourth Claim for Relief" – the first one is for Negligence and the second for Intentional Infliction of Emotional Distress. For purposes of this Motion, Defendants refer to the two claims as the "Fourth Claim for Relief (First)" and the "Fourth Claim for Relief (Second)."

7

police officer's intentional use of force would directly conflict with the immunity afforded public entities under A.R.S. § 12-820.05(B) and the statutory presumption of reasonableness that is afforded police officers using physical force in making arrests under A.R.S. § 12-716(A). Id. at 61, ¶¶ 24-25, 425 P.3d at 237. Therefore, this claim fails to state a claim upon which relief can be granted and should be dismissed.

### 2. The City of Phoenix is Immune From Plaintiff's Claim for Negligence Under A.R.S. § 12-820.05(B).

Plaintiff's negligence claim is based on the same conduct of Officer Gomez as is his claim for assault and battery discussed in Section II(C) above. As the Arizona Supreme Court reiterated in Ryan, the Arizona legislature has provided immunity to public entities from liability for alleged uses of excessive force by their employees in A.R.S. § 12-820.05(B). This immunity precludes claims for negligence against public entities for alleged use of excessive force by police officers. 245 Ariz. at 61, ¶ 24, 425 P.3d at 237. Thus, Plaintiff's negligence claim against the City of Phoenix is also barred by A.R.S. § 12-820.05(B) and should be dismissed on this basis.

### 3. The City of Phoenix Has Qualified Immunity from Claims for Negligence.

Under Arizona law, governmental entities are entitled to qualified immunity from simple negligence for the discretionary actions of their police officers made in the course of their official duties. See A.R.S. § 12-820.05(A) (stating that the Arizona immunity statutes "shall not be construed to affect, alter or otherwise modify any other rules of tort immunity regarding public entities and public officers as developed at common law"); Landeros v. City of Tucson, 171 Ariz. 474, 475, 831 P.2d 850, 851 (App. 1992) (holding that police officers are entitled to common law qualified immunity from a claim of negligence "to assure continued vigorous police work"); Clouse ex rel. Clouse v. State, 199 Ariz. 196, 203, ¶ 27, 16 P.3d 757, 764 (2001) (holding that "in the absence of any statutory direction" on a particular government action, common law immunity applies); Clouse v. State, Dept. of Public Safety, 194 Ariz. 473, 478, 984 P.2d 559, 564 (App. 1998), vacated on other grounds

8

by 199 Ariz. 196, 16 P.3d 757 (citing Landeros and holding that governmental immunity for simple negligence based on claims related to "vital" government functions such as the "active investigation and prosecution of crime" has been the public policy in Arizona for its entire history and holding that police officers can only be held liable for gross negligence for their actions in a police investigation); Hulstedt v. City of Scottsdale, 884 F. Supp. 2d 972, 1017 (D. Ariz. 2012) (citing the Arizona Supreme Court's opinion in Clouse and holding that police officers "making discretionary decisions while acting in their official capacity in Arizona are only liable 'if the plaintiffs establish[] gross negligence'"). In this case, the alleged actions of the City of Phoenix police officers on which Plaintiff's claim for negligence is based are all discretionary actions the officers made in the course of their official duties. (Doc. 18, ¶¶ 92-94). Therefore, the City of Phoenix is immune from Plaintiff's claim against the City of Phoenix for negligence.

For all of the foregoing reasons, Plaintiff's Fourth Claim for Relief (First) for negligence should be dismissed.

### E. Plaintiff's Fourth Claim for Relief (Second) – Intentional Infliction of Emotional Distress against the City of Phoenix – Should Also Be Dismissed.

In his Fourth Claim for Relief (Second), Plaintiff alleges that "Defendants' and the other officers' above-described conduct—implementing the 'Funnel and Hunt' operation plan, shooting Plaintiff with a less-lethal munition, fracturing his arm, and then mocking him rather than providing him medical care – was extreme and outrageous." (Doc. 18, ¶ 99). First, to the extent this claim is based on the use of force against Plaintiff, it is barred by A.R.S. § 12-820.05(B), for the same reasons set forth in Sections II(C) and (D) above regarding assault and battery and negligence. Additionally, the claim for relief fails to state a claim upon which relief can be granted.

To state a claim for intentional infliction of emotional distress under Arizona law, a plaintiff must allege facts demonstrating:

(1) that the defendant's conduct was "extreme" and "outrageous;"

9

(2) that the defendant either intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from his conduct; and

(3) that severe emotional distress in fact occurred as a result of the defendant's conduct.

Citizen Publ'g Co. v. Miller, 210 Ariz. 513, 516, ¶ 11, 115 P.3d 107, 110 (2005). With respect to the first element, a plaintiff must allege facts demonstrating that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Johnson v. McDonald, 197 Ariz. 155, 160, ¶ 23, 3 P.3d 1075, 1080 (App. 1999). Under this standard, even a defendant's "unjustifiable" conduct does not necessarily rise to the level of "atrocious" and "beyond all possible bounds of decency" that would cause an average member of the community to believe it was "outrageous." Nelson v. Phoenix Resort Corp., 181 Ariz. 188, 199, 888 P.2d 1375, 1386 (App. 1994). The "conduct necessary to sustain an intentional infliction claim falls at the very extreme edge of the spectrum of possible conduct." Watts v. Golden Age Nursing Home, 127 Ariz. 255, 258, 619 P.2d 1032, 1035 (1980). Furthermore, the court determines whether the acts at issue are sufficiently outrageous to state a claim for relief. Johnson, 197 Ariz. at 160, 3 P.3d at 1080. To sufficiently allege the second element, a plaintiff must allege facts showing that the defendant acted with intent to cause emotional distress or recklessly disregarded the near certainty that emotional distress would result from his conduct. Wallace v. Casa Grande Union High School District, 184 Ariz. 419, 428, 909 P.2d 486, 495 (App. 1995). Finally, to sufficiently allege the third element, a plaintiff must allege facts showing that the defendant's conduct "actually caused" him to suffer distress "so severe that no reasonable man could be expected to endure it." Pankratz v. Willis, 155 Ariz. 8, 17, 744 P.2d 1182, 1191 (App. 1987).

In Midas Muffler Shop v. Ellison, 133 Ariz. 194, 650 P.2d 496 (App. 1982), the Arizona Court of Appeals gave examples where courts found the emotional distress to be sufficiently severe to prove severe emotional distress. They included (1) plaintiff suffered a

heart attack and nervous exhaustion; (2) plaintiff experienced such severe fright that it resulted in the premature birth of a dead baby; (3) plaintiff was writhing in bed in a state of extreme shock and hysteria, suffering severe nervousness and headaches resulting in a complete breakdown of her physical and emotional well-being that she was unable to work; (4) plaintiff suffered severe headaches and stress and her state of anxiety ultimately required hospitalization; (5) plaintiff who suffered from multiple sclerosis experienced stress and a relapse resulting in a permanent impairment of her condition. <u>Id.</u> at 199, 650 P.2d at 501.

  In his Amended Complaint, Plaintiff fails to allege facts to support any one of the three elements of intentional infliction of emotional distress. The complained of conduct upon which Plaintiff cases this claim is (1) "implementing the 'Funnel and Hunt' operation plan, (2) shooting Plaintiff with a less-lethal munition, and (3) mocking Plaintiff and delaying seeking medical care for Plaintiff. (Doc. 18, ¶ 99). None of this alleged conduct rises to the level of extreme and outrageous conduct because it is not conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Indeed, according to the Amended Complaint, at the time the alleged "Funnel and Hunt" operation was being carried out and force was used against Plaintiff, Plaintiff admits he was acting in violation of the 8:00 pm curfew that had been imposed by Arizona's governor on an emergency basis due to days of unrest that led to widespread property damage in the hundreds of thousands of dollars, and Plaintiff was attempting to scale a fence leading into a historic residential neighborhood where he and the other curfew violators could have caused significant damage to historic properties and/or injured or killed residents in that neighborhood. (Doc. 18, ¶¶ 17, 19, 25, 33, 35, 40). Thus, the alleged means used to locate and take the curfew violators into custody and the use of less than lethal force to prevent them from entering a historic neighborhood was not, as a matter of law, so outrageous that it goes beyond all decency. <u>See</u>, <u>e.g.</u>, <u>Casado v. Miami-Dade Cty.</u>, 340 F. Supp. 3d 1320, 1324, 1332 (S.D. Fla. 2018) (ruling that the plaintiff's complaint failed to state a claim for

intentional infliction of emotional distress under Florida law (which has the same elements as the claim under Arizona law) because the plaintiff's allegations that the police officer's actions during a traffic stop of attempting to slam the plaintiff into the hood of his car, punching the plaintiff in the face repeatedly, and mockingly stating, "What the f**k are you going to do about it?," when the plaintiff asked for his badge number and questioned being punched in the face were not extreme and outrageous as a matter of law). Additionally, Plaintiff's claim that he was mocked by unidentified police officers and that medical treatment for his bleeding arm was delayed does not rise to the level of extreme or outrageous conduct as a matter of law. See, e.g., Kinan v. City of Brockton, 876 F.2d 1029, 1036 (1st Cir. 1989) (holding that a police officer's actions in refusing the plaintiff's repeated requests for hospital care for a dog bite wound that was bleeding profusely and ordering the plaintiff to remove all of his clothing did not rise to the level of "extreme and outrageous" conduct for a claim of intentional infliction of emotional distress under Massachusetts law (which has the same elements as a claim for intentional infliction of emotional distress under Arizona law)). Plaintiff admits that he was eventually provided with medical treatment by the Phoenix Fire Department and then at the hospital emergency room. (Doc. 18, ¶¶ 46-47). Therefore, Plaintiff's allegations do not establish extreme and outrageous conduct as a matter of law.

Second, there are no factual allegations demonstrating that any City of Phoenix police officers acted with intent to cause emotional distress or recklessly disregarded the mere certainty that emotional distress would result—only legal conclusions which is not sufficient.

Finally, Plaintiff does not allege that he experienced severe emotional distress as a result of the complained of conduct – emotional distress so severe that no reasonable man could be expected to endure it. Indeed, in his Amended Complaint, Plaintiff merely alleges that he suffered "emotional distress." (Doc. 18, ¶ 102). Therefore, Plaintiff has failed to state a claim for intentional infliction of emotional distress against the City of Phoenix and that claim should be dismissed.

**F.  Plaintiff Cannot Recover Punitive Damages against the City of Phoenix.**

Plaintiff asserts a claim for punitive damages in his Amended Complaint against the City of Phoenix. Punitive damages are not recoverable under 42 U.S.C. § 1983 against municipalities or individual government officials in their official capacity. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). Likewise, public entities are immune from punitive damages claims under state law. See A.R.S. § 12-820.04 (stating that "[n]either a public entity nor a public employee acting within the scope of his employment is liable for punitive or exemplary damages"). Therefore, punitive damages are not recoverable against the City of Phoenix, and Plaintiff's claim for punitive damages against the City should be dismissed.

**III.  CERTIFICATION PURSUANT TO LRCIV 12.1(c).**

Undersigned counsel certify that before filing this Partial Motion to Dismiss, they conferred with Plaintiff's counsel in writing and also attempted to confer by telephone regarding the arguments they intended to assert in this motion for failure to state a claim upon which relief can be granted. Plaintiff's counsel never responded to Defendants' counsel's e-mails and voicemail message regarding whether Plaintiff believes that the defects in the Amended Complaint are curable by amendment. Therefore, Defendants have complied with the requirements of LRCiv 12.1(c).

**IV.  CONCLUSION.**

For all of the foregoing reasons, all of Plaintiff's claims against the City of Phoenix should be dismissed.

DATED this 4th day of January, 2021.

                              BERKE LAW FIRM, PLLC

                              By  s/ Jody C. Corbett
                                 Lori V. Berke
                                 Jody C. Corbett
                                  Attorneys for Defendants City of Phoenix,
                                    City of Phoenix Police Chief Jeri Williams,
                                    and Officer Eric Gomez

**CERTIFICATE OF SERVICE**

I hereby certify that on January 4, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Stephen D. Benedetto
Heather Hamel
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003
benedetto@the-plf.com
hamel@the-plf.com
Attorneys for Plaintiff

s/ Jody C. Corbett