**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

David Saccoccio,

Plaintiff,

v.

Eric Gomez,

Defendant.

No. CV-20-01141-PHX-DJH

**ORDER**

Plaintiff filed a civil rights claim under 42 U.S.C. § 1983 alleging that City of Phoenix Police Officer, Eric Gomez, used excessive force upon him.[1] On May 31, 2020, the Arizona Governor declared a state of emergency due to civil unrest that had taken place the prior three nights and put a statewide curfew into effect beginning that night at 8:00 p.m. Plaintiff participated in a protest in downtown Phoenix and was still in the downtown area after the curfew began. At approximately 9:18 p.m., Officer Gomez fired a 40-millimeter OC impact round at Plaintiff, striking him in the arm. Plaintiff sustained an injury to his arm, which required medical attention. The sole claim to be tried is whether Officer Gomez used excessive force, and if so, what if any damages should be awarded to Plaintiff. A trial jury will thus determine whether Officer Gomez's use of force against Mr. Saccoccio on May 31, 2020 was objectively unreasonable under the totality of the circumstances. If they so find, the jury will determine if Mr. Saccoccio is entitled to any damages.

---

[1] The brief background is largely taken from the parties Stipulated Joint Statement of the Case (Doc. 306).

Before the Court are the parties Motions in Limine. Plaintiff has filed six Motions (Docs. 333, 319, 320, 321, 322 and 323), and Defendant has filed ten Motions (Docs, 308, 309, 310, 311, 312, 325, 326, 327,328 and 330). To the extent the Court can issue a final Order without additional argument or evidence, it does so herein.[2]

## I. Motions in Limine – Legal Standards

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n.4 (1984). Motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." *Brodit v. Cabra*, 350 F.3d 985, 1004–05 (9th Cir. 2003) (citations omitted). Generally, motions in limine that seek exclusion of broad and unspecific categories of evidence are disfavored. *See Sperberg v. Goodyear Tire and Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). However, "[a] motion in limine is not the proper vehicle for seeking a dispositive ruling on a claim, particularly after the deadline for filing such motions has passed." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 (9th Cir. 2013) (citations omitted).

The Court issues its rulings on the record before it. Therefore, rulings on such motions "are not binding on the trial judge [who] may always change his [or her] mind during the course of a trial." *Id*. (quoting *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) (citing *Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. It merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Id*. (quoting *Ind. Ins. Co. v. Gen. Elec. Co*., 326 F.Supp.2d 844, 846 (N.D. Ohio 2004)).

Motions to exclude evidence require the party seeking exclusion to inform the Court

---

[2] For example, Defendant's Motion in Limine No. 8 seeks to preclude Plaintiff from playing audio of a Facebook video with narratives contained in Plaintiff's Exhibits 35, 36 39 and 40. (Doc. 327.) The Court orders Plaintiff to produce these Exhibits during the Final Pretrial Conference to permit the Court to evaluate whether they are admissible.

of the evidence's substance with specificity. *See* Fed. R. Evid. 103(a)(2); *United States v. Bradford*, 905 F.3d 497, 505 (7th Cir. 2018) (finding a motion in limine did not satisfy Rule 103(a)'s specificity requirement by failing to identify the specific evidence or explain its admissibility).[3] The party offering the evidence and testimony at trial bears the burden of proof that it is relevant under Rule 401 and not prejudicial under Rule 403. Federal Rule of Evidence 401 provides that "[e]vidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401. Under Rule 402, relevant evidence is admissible unless otherwise provided. Fed. R. Evid. 402. However, all relevant evidence is subject to the balancing test set forth by Rule 403. That is, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Court applies these principles to the record presently before it.

## II. Plaintiff's Motions

### a. Plaintiff's Motion in Limine No. 1 (Doc. 333-1); Defendant's Response (Doc. 350)

Plaintiff seeks an Order precluding Defendant Gomez from "offering evidence, testimony, or argument concerning (a) acts of violence, vandalism, property damage, and other conduct occurring on May 28, 29, and 30 civil unrest, and (b) any other such acts, including from May 31, 2020, that were not personally observed by, or communicated to, Officer Gomez before he deployed the 40mm OC impact round against Mr. Saccoccio." (Doc. 333-1 at 1.) As representative examples, Plaintiff includes "the alleged flame-thrower incident, fires at Talking Stick Resort Arena, fireworks at the Maricopa County City Court complex, frozen-bottle and rock-throwing incidents at locations other than the alley behind 11th Way and Polk Street, the security-guard rescue at the Collier Center, and

[3] Except where otherwise noted, all "Rule" references are to the Federal Rules of Evidence.

other prior night events never transmitted to Officer Gomez." (*Id.*) Plaintiff does not seek to exclude "evidence of conduct Officer Gomez personally observed, information actually relayed to him by radio relating to May 31, 2020, or information he received in pre-deployment briefings he attended." (*Id.* at 1−2.)

Plaintiff argues that, because the standard for assessing the reasonableness of a particular use of force is based on the perspective of a reasonable officer in the defendant's position at the time, information outside Defendant's knowledge prior to his use of force is irrelevant. (*Id.* at 2.) Plaintiff acknowledges that the Ninth Circuit determined that the previous nights of civil unrest were "part of the totality of the circumstances" relevant to the reasonableness analysis here, but he argues that the Ninth Circuit also found that these events, "'did not justify the indiscriminate use of serious force against an individual for violating a misdemeanor curfew.'" (*Id.* at 2 (quoting Ninth Circuit Memorandum, Doc. 294-1 at 4).) Plaintiff argues that "[p]ermitting the defense to flood the trial with prior-night evidence—including photos, videos, and witness testimony—would invite the jury to relitigate a question the court of appeals has already resolved." (*Id.* at 2−3.) Plaintiff also argues that all prior nights' evidence should be excluded under Rule 403 since, "even if marginally relevant," May 31, 2020 "was a totally different day" in several respects from the prior days, so the probative value of the evidence is low, and the probative value of any events unknown to Defendant Gomez is zero; whereas "the danger of unfair prejudice, confusion, and undue delay is substantial." (*Id.* at 3.)

Because "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene," *Graham v. Connor*, 490 U.S. 386, 396 (1989), a trier of fact "cannot consider evidence of which the officers were unaware." *Glenn v. Washington Cnty.*, 673 F.3d 864, 873 n.8 (9th Cir. 2011). Under this standard, any facts and circumstances that were unknown to Defendant Gomez prior to his use of force are irrelevant. The Court will nonetheless deny Plaintiff's request to preclude all such evidence because it is not clear from the Motion what evidence this includes. *See* Fed. R. Evid. 103(a)(2); *Bradford*, 905 F.3d at 505 ("Bradford's motion in limine did not

satisfy Rule 103(a)'s specificity requirement. It did not identify the specific evidence he feared would be admitted or explain why it was inadmissible"). Even though he identifies several incidents that were purportedly unknown to Defendant Gomez on May 31, 2020, Plaintiff has not demonstrated that Defendant Gomez was unaware of these or any other specific incidents, and Defendant Gomez's deposition testimony suggests otherwise.

Defendant notes that "Defendant Gomez testified in detail at his deposition about acts of violence, vandalism, property damage, and other conduct occurring on May 28–31 which he personally observed, heard broadcast on the radio and/or was informed about," which included "officers being assaulted, the flame-thrower incident, fires near Talking Stick Arena, fireworks and multiple frozen-bottle and rock-throwing incidents." (Doc. 350 at 2.) Defendant also notes that Defendant Gomez was on duty as a Grenadier covering the whole downtown area for the entirety of the rioting that took place between May 28 and 31, 2020, and he attended each day's briefings and heard all of the radio broadcasts while on duty, meaning he was aware of "essentially everything taking place during those four days of rioting." (*Id.*) Since Plaintiff does not seek to exclude "evidence of conduct Officer Gomez personally observed, information actually relayed to him by radio relating to May 31, 2020, or information he received in pre-deployment briefings he attended," and Plaintiff has not shown with specificity which facts are outside this scope, the Court cannot determine which, if any, prior nights' evidence or evidence from May 31, 2020 to exclude. The Court will deny Plaintiff's Motion to preclude evidence based on Defendant Gomez's purported lack of knowledge.

The Court will also deny Plaintiff's Motion to exclude evidence of prior nights' events on the premise that permitting this evidence "would invite the jury to relitigate a question the court of appeals has already resolved." (Doc. 331-1 at 3.) As noted, the Ninth Circuit found that "the preceding nights of civil arrest are part of the totality of circumstances" to be considered. (Doc. 294-1 at 4.) Although it also found on the summary judgment record that these events, which the summary judgment standard required it to construe in Plaintiff's favor, "did not justify the indiscriminate use of serious

force against an individual for violating a misdemeanor curfew," it made clear that this was a jury question, stating that "a reasonable jury **could find** that the use of the OC round against a fleeing, non-dangerous, Saccoccio violated his Fourth Amendment right." (*Id.* (emphasis added).) This holding confirms the jury's role in making this determination.

The Court will also deny Plaintiff's broad request to preclude evidence of prior nights' events under Rule 403. Plaintiff argues that the risk of unfair prejudice, confusion, and undue delay from permitting Defendant to offer evidence of what Plaintiff characterizes as "unrelated violence, fires, and property damage by other actors at other locations" substantially outweighs the probative value of this evidence in assessing whether Defendant Gomez's use of force against Plaintiff was objectively reasonable. (*See* Doc. 333-1 at 3.)

Considering the Ninth Circuit's finding that "the preceding nights of civil arrest are part of the totality of circumstances" to be considered, and applying the relevant caselaw the appeals court cited for this precent, Plaintiff's request to preclude all prior nights' evidence sweeps too far. *See Barnes v. Felix*, 605 U.S. 73, 80 (2025) (quoting *Graham*, 490 U.S. at 396) ("deciding whether a use of force was objectively reasonable demands 'careful attention to the facts and circumstances' relating to the incident, as then known to the officer"); *Vos v. City of Newport Beach*, 892 F.3d 1024, 1034 (9th Cir. 2018) ("the events leading up to" the use of force "are encompassed in the facts and circumstances [relevant to] the reasonableness analysis"). Further, as Defendant argues,

> Evidence of what took place May 28−30 and on May 31 prior to the use of force incident provides the factual foundation necessary for the jury to understand what circumstances were known to Officer Gomez on May 31 and what threat environment he reasonably perceived. Excluding evidence of the first three nights of rioting would artificially narrow the factual context and impermissibly force the jury to evaluate Officer Gomez's use of force in an artificial vacuum, divorced from the circumstances that actually informed his decision.

(Doc. 350 at 2 (citing *Vos*, 892 F. 3d at 1034).)

Absent targeted arguments as to why specific events should be excluded, the Court

is not persuaded that the probative value of permitting Defendant to present prior nights' evidence as part of the totality of the circumstances known to him at the time of his use of force is substantially outweighed by the danger that this evidence will be unfairly prejudicial or confuse the jury as to the proper use of this evidence.[4] To the extent Plaintiff objects that permitting this evidence will waste time or subject the jury to needlessly cumulative evidence, Plaintiff has also not articulated any discernable basis, other than outright exclusion, for limiting this evidence.

**IT IS ORDERED** denying Plaintiff's Motion in Limine No. 1 (Doc. 333).

**b. Plaintiff's Motion in Limine No. 2 (Doc. 319); Defendant's Response (Doc. 334)**

Plaintiff seeks an Order precluding Defendant "from arguing or eliciting testimony characterizing Mr. Saccoccio as having been suspected of the felony offense of Riot under A.R.S. § 13-2903." (Doc. 319 at 1.)

In Arizona, "[a] person commits riot if, with two or more other persons acting together, such person recklessly uses force or violence or threatens to use force or violence, if such threat is accompanied by immediate power of execution, which disturbs the public peace." Ariz. Rev. Stat. § 13-2902.

Plaintiff argues that the Court should preclude as irrelevant any evidence or argument that Defendant Gomez suspected Plaintiff of riot because the Ninth Circuit already resolved this issue in Plaintiff's favor. (Doc. 319 at 1–2.) He notes that, in assessing the severity of the crimes at issue, the Ninth Circuit found that "Gomez only had reason to suspect Saccoccio of committing nonviolent misdemeanors: attempting to trespass into a yard, obstructing the police, and violating the curfew." (*Id.* 1–2 (quoting Ninth Circuit Memorandum, Doc. 294-1 at 3).)[5]

---

[4] Although a specific event may be unfairly prejudicial or too far removed in space or time to give proper context to the use-of-force at issue here, Plaintiff has not made this argument but instead appears only to seek a sweeping exclusion on all prior nights' evidence.

[5] Plaintiff leaves out that the Ninth Circuit went on to state that "[t]he evidence, including Gomez's own testimony that he did not suspect Saccoccio of rioting at the time, creates a

Plaintiff also argues that any argument that Defendant Gomez suspected Plaintiff of riot under § 13-2903 is foreclosed by Gomez's own statements to the contrary. (Doc. 319 at 2.) Plaintiff cites to select portions of Gomez's deposition testimony, including his acknowledgement that he did not personally see Plaintiff commit any act of violence, threat, weapon-carrying, or property damage, and he did not know what Plaintiff had done before he saw him climbing the fence or whether Plaintiff had joined any group. (Doc. 319 at 2; *see* Doc. 266-5 at 44, Gomez Dep. at 94:6–95:12.) Also, when asked if he had the "elements of riot, obstructing, and trespass" in mind when he engaged Plaintiff, Gomez answered, "Yes, not – not so much the rioting, but everything else." (Doc. 266-5 at 67, Gomez Dep at 120:9–14.)

The Court will grant Plaintiff's Motion in part to the extent it will preclude Defendant from arguing or offering evidence connecting Plaintiff's actions on May 31, 2020, to the statutory elements of felony riot under § 13-2902. Plaintiff was never arrested or charged with felony riot under § 13-2902, and any testimony linking his actions or suspected actions to the elements of that offense is not relevant to the issue to be tried. Moreover, any potential probative value of such evidence is substantially outweighed by the risk of wasting time, confusing the issues, and unfair prejudice to Plaintiff.

The Court will deny the Motion, however, to the extent Plaintiff seeks to preclude Defendant Gomez from testifying about acts of violence, threats, and property damage from the prior nights of civil unrest and/or on May 31, 2020, and from using the terms "riot" or "rioting" to describe those events. Gomez's perception of those events is relevant to the totality of the circumstances known to him at the time, and Gomez can describe what he saw in commonly understood terms without opining or inviting the jury to decide whether particular actions satisfy the legal elements of riot under Arizona law.

The Court is also not persuaded that the statements Plaintiff proffers from Defendant Gomez's deposition testimony, stating he did "not so much" have the elements of riot in mind when he engaged Plaintiff with the 40 mm OC impact round, precludes Gomez from

---

**genuine dispute** as to whether Gomez suspected Saccoccio of rioting in violation of Arizona Revised Statute § 13-2903." (Doc. 294-1 at 3 (emphasis added).)

testifying about all the facts and circumstances known to him at that time. In context, Defendant Gomez continued,

> He was not obeying Officer Tate's commands. And then he was climbing into a fenced residential yard. And, obviously, he was participating because the air unit cleared, prior to us contacting them that there were several groups being dispersed that were the agitators basically involved in a riot, and they were all dispersing towards our directions. And then later clarified that this particular group is coming right at us at our particular spot. So yes, that idea was in my head.

(*Id.*, Gomez Dep at 120:14–25.)

When next asked, "You said not so much the riot though, right?" Defendant Gomez responded,

> Meaning that I was looking at what I was looking at that particular instance, right? The riot -- we just encountered a riot at 7th Street and Roosevelt prior to this, I don't know, maybe a half an hour prior to when this incident occurred where officers were assaulted, property was damaged. They were trying to gain access to the freeway. DPS deployed CS gas. Officers with Phoenix did -- deployed hand-thrown CS gas. Several officers, including myself, fired on targets who were trying to assault the police at 7th Street and Roosevelt just 30 minutes prior to that. That was a riot. All of those people in that riot were pushed in that direction -- not pushed but they had to move in that direction away from what the force they were encountering, if that was -- if that makes sense.

(*Id.* at 68, Gomez Dep. at 121:1–17.) And when asked, "Do I understand your testimony to be that you assumed everybody coming down the alleyway and making their way towards the fence had done all those violent acts you've testified to?" Defendant Gomez answered, "It doesn't matter if one of them didn't do it. There's a group. They're involved. And they're involved in a riot. You're a participant in that riot." (*Id.* at 69, Gomez Dep. at 122:13–20.)

Setting the statutory elements of riot aside, these statements create a genuine issue of fact whether Defendant Gomez reasonably believed the group of people running through

the alley towards Gomez and other officers were involved in the earlier acts of violence and were trying to evade police when Gomez shot a 40mm OC impact round at Plaintiff. Gomez's knowledge and perception of these events is also relevant under *Graham* to assessing the government interest at stake when Gomez engaged in this use of force and whether a reasonable officer under the totality of the circumstances known to Gomez at the time would have reasonably believed such force was necessary. The Court will therefore deny Plaintiff's Motion to the extent Plaintiff seeks to preclude Defendant Gomez from testifying about these perceptions, including whether he suspected the group of individuals running in the alley—including Plaintiff—of "riot" in the general sense of that word.

**IT IS ORDERED** granting in part Plaintiff's Motion in Limine No. 2 (Doc. 319) to the extent Defendant is precluded from arguing or presenting evidence that Plaintiff committed felony riot under Arizona Revised Statute § 13-2902; Defendant Gomez may, however, testify about his perceptions of events on May 31, 2020 and the prior nights of civil unrest and is not precluded from using the word "riot" in a general sense to describe those events.[6]

**c. Plaintiff's Motion in Limine No. 3 (Doc 320); Defendant's Response (Doc. 335)**

Plaintiff seeks an Order "excluding the opinion testimony of Defendant's expert Michael J. Kuzel," or, alternatively, "precluding Defendant's expert Michael J. Kuzel from opining regarding medical conditions that may have rendered Mr. Saccoccio unusually susceptible to injury; whether a police officer could have reasonably anticipated Mr. Saccoccio's injury; or possible alternative mechanisms of Mr. Saccoccio's injury." (Doc. 320 at 1.) Plaintiff argues that "Mr. Kuzel is a bioengineer whose substantive professional work centers on bicycle safety, pedestrian falls, and transportation engineering. He is not a medical doctor, has no expertise in HIV medications, performed

[6] This ruling comports with the Court's ruling on Defendant's Motion in Limine No. 6 below and with the Court's rejection of Defendant's requested non-model jury instruction No. 2, seeking to instruct the jury regarding the definition of "riot" under Ariz. Rev. Stat. § 13-2903.

no biomechanical quantification of the projectile force at issue, and offers opinions either contrary to the Ninth Circuit's mandate, legally irrelevant, or based on speculation." (*Id.*)

Rule 702 of the Federal Rules of Evidence tasks the trial court with ensuring that any expert testimony provided is relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1999). A qualified expert may testify on the basis of "scientific, technical, or other specialized knowledge" if his testimony "will assist the trier of fact to understand the evidence," provided the testimony rests on "sufficient facts or data" and "reliable principles and methods," and "the witness has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)–(d). An expert may be qualified to testify based on his or her "knowledge, skill, experience, training, or education." *Id.* However, an expert witness, "cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law. Similarly, instructing the jury on the applicable law is the exclusive province of the court." *Nationwide Transp. Fin. v. Cass Info, Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008). An expert may refer to legal provisions but may not reach legal conclusions. *See Hangarter v. Provident Life & Accident Insurance Co*., 373 F.3d 998, 1016–17 (9th Cir. 2004).

The trial court must first assess whether the testimony is valid and whether the reasoning or methodology can properly be applied to the facts in issue. *Daubert*, 509 U.S. at 592–93. "The inquiry envisioned by Rule 702" is "a flexible one." *Id*. at 594. The proponent of expert testimony has the ultimate burden of showing that the expert is qualified and the proposed testimony is admissible under Rule 702. *See Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

According to Defendant, Mr. Kuzel is a registered Professional Engineer (Mechanical) in Arizona with certifications as a Human Factors Professional who has taught human factors-related statistics and safety engineering courses at ASU since 2012. (Doc. 335 at 2.) Mr. Kuzel has a B.S. in bioengineering, with coursework in anatomy and physiology, materials science, and biomechanics, and he has M.S. degrees in industrial engineering and applied psychology, with coursework in injury biomechanics,

experimental design, and statistical analysis. (*Id.* at 1.) Mr. Kuzel's work experience includes mechanical testing on human and animal cadavers—including "fatigue and load to failure" testing on the spinal column, hips, knees, and long bones—and testing on orthopedic constructs and instruments, such as implantable medical devices, external fixation devices, and surgical tools; participation in research with medical doctors to evaluate new surgical techniques and new modified devices; and diagnostic testing of a medical device designed to assess spinal motion of patients with cervical spine injuries. (*Id.* at 1−2.) Mr. Kuzel has also completed a 40-hour Force Science Analyst course and is an expert in reconstruction, injury biomechanics, and human factors with experience evaluating police use-of-force events. (*Id.*) He has 28 years' experience in forensic work, analyzing human performance and behavior in a variety of environments, products, and tasks, and he has been admitted to testify in state and federal courts as an expert in injury biomechanics and human factors in relation to a variety of injury events, including police use of force. (*Id.*)

As relevant to Plaintiff's Motion, Mr. Kuzel offers the following opinions regarding Plaintiff's HIV status and medications:

> 1. The medical records indicate Saccoccio is HIV positive and had at one time been prescribed the tenofovir disoproxil fumarate (TDF) based medications Viread and Atripla. Multiple studies have indicated that both HIV, as well as TDF-based medications, reduce bone mineral density (BMD) (Grigsby et al., 2010; Baranek et al., 2020; Ahmed et al., 2023).
>
> 2. Saccoccio's medical history may have predisposed him to bone fracture injuries, such as a radius fracture, from either a direct blow to the forearm by the impact round or a fall with subsequent indirect loading.

(Doc. 335 at 3.)

Plaintiff argues that these opinions should be excluded because Mr. Kuzel is not a medical doctor, has no expertise in medications used to treat HIV, and he states only that Plaintiff's HIV status and medications "may have" predisposed Plaintiff to a bone fracture

at lower levels of force. (Doc. 320 at 2.) Plaintiff argues that the deficient "may have" opinion is not based on reliable methodology or application of principles to the facts in this case because Mr. Kuzel did not examine Plaintiff, review patient-specific bone-density data, or establish that Plaintiff's bone density was abnormal, and he has not offered to a reasonable degree of medical or scientific certainty that any predisposition caused Plaintiff's fracture. (*Id.*)

Defendant argues that Mr. Kuzel is not opining as a medical doctor but as a biomechanics expert, and he "offers scientific support that bone structure can be weakened due to the medications Plaintiff was taking, predisposing him to experiencing the injury at lower magnitudes of force." (Doc. 335 at 3.) Defendant argues that these opinions are relevant to assist the jury in determining whether Plaintiff experienced an atypical injury from the OC round that would not have occurred except for this propensity, from which a reasonable jury could determine the use of force was not excessive. (*Id.*) Defendant argues that this testimony is especially probative if Plaintiff's experts are permitted to testify on causation because they did not consider this explanation for Plaintiff's fracture. (*Id.*)

The Court disagrees. Even if the scientific studies Mr. Kuzel reviewed showing that HIV and TDF-based HIV medications can reduce bone mineral density are based on appropriate principles and methodology, and Mr. Kuzel's opinion that low bone mineral density predisposes individuals to fractures is within his knowledge and expertise as an expert in injury biomechanics, absent any evidence about the status of Plaintiff's HIV, including when and for how long Plaintiff took TDF-based medications as compared to the doses and lengths of time typically required for bone mineral loss, Mr. Kuzel's opinion that Plaintiff's HIV and HIV medications "may have predisposed him to bone fracture injuries" is merely speculative and not based on "sufficient facts or data" or the reliable application of "the principles and methods to the facts of the case." Fed. R. Evid. 702(a)–(d). Because Mr. Kuzel does not demonstrate sufficient knowledge of Plaintiff's relevant medical history or bone mineral density status to opine on this issue with any degree of scientific certainty, the Court will grant Plaintiff's Motion in part to the extent it will preclude Mr.

Kuzel from testifying that Plaintiff's HIV or HIV medications weakened his bone mineral density and predisposed him to fractures, such as the one he suffered in this case.

Plaintiff also seeks to preclude Mr. Kuzel from opining that Plaintiff's fracture could have resulted from one of three distinct causes—the impact round, a direct fall, or falling on an outstretched hand—as being inadmissible under Rule 702 due to a lack of affirmative evidence supporting these conclusions. (Doc. 320 at 3.) Plaintiff argues that presenting alternative theories of causation is moreover irrelevant under Rules 401 and 403 because, "whether the fracture resulted from direct impact of the round, from the impact of falling caused by the round, or from a bracing reflex caused by the fall, Officer Gomez proximately caused the injury." (Doc. 320 at 4.) Because of this, Plaintiff argues there is no probative value of speculating about which alternative theory caused the injury and that permitting Mr. Kuzel to opine on this "would only confuse the jury about an issue that is not actually in dispute." (Doc. 320 at 4.)

In his Response, Defendant argues that

> Kuzel's opinions as to unanticipated injury and three possible causes [] are based on reliable principles and methods – review of the evidence, including medical records, research of relevant literature, a recent study, the specification sheet, and his education, background and experience. . . .
>
> Kuzel's report addresses the plausible mechanisms for an isolated midshaft radial fracture, and [it] explains that the fracture could have occurred in multiple scenarios consistent with the incident evidence. These are precisely the kinds of technical and specialized assessments that can assist the trier of fact in evaluating competing narratives about injury causation and risk/foreseeability in the context of a 40mm OC impact round deployment.

(Doc. 335 at 4–5.) Defendant further argues that Mr. Kuzel "did not need to perform any testing or biomechanical modeling to render these opinions," and he argues that "Plaintiff is certainly free to cross-examine him on that," but this it is not a basis to preclude Mr. Kuzel from testifying. (*Id.* at 5.)

The Court agrees that offering an opinion as to possible alternative causes of

Plaintiff's injury is within Mr. Kuzel's expertise. *See Burke v. TransAm Trucking, Inc.*, 617 F. Supp. 2d 327, 334 (M.D. Pa. 2009) (biomechanical expert "may not testify as to the extent of injuries suffered . . . which would require the identification and diagnosis of a medical condition, but [he or she] may testify that the force sustained by Plaintiff in the subject accident could potentially cause certain injuries as this amounts to a biomechanical determination"). Mr. Kuzel's opinions are also based on the application of biomedical principles to the facts and evidence in this case because they are based on Kuzel's consideration of the type of injury Plaintiff suffered and how such an injury could occur under the facts and circumstances surrounding the injury. *See Weber v. TMG Logistics, Inc.*, 805 F. App'x 463, 466 (9th Cir. 2020) (holding it was not unreasonable for district court to allow biomechanical expert to testify on injury causation after establishing requisite foundation regarding reliability of his methodology).

Plaintiff's argument that presenting alternative theories about the cause of Plaintiff's injury is irrelevant because, under all three theories, Defendant's use of force is the proximate cause of that injury, is also not a reason to preclude Mr. Kuzel's opinion. This argument goes to the weight, not the admissibility of this evidence. Plaintiff may cross-examine Mr. Kuzel about the central role being struck by the OC round played in all three theories, and he may argue to the jury what weight, if any, to give to the alternative mechanism evidence when considering the reasonableness of that use of force. Accordingly, the Court will deny Plaintiff's Motion to Exclude Mr. Kuzel's "alternative-mechanism" opinions as to the possible causes of Plaintiff's injury.

Plaintiff lastly argues that the Court should preclude Mr. Kuzel from offering his opinion that Officer Gomez "could not have reasonably anticipated" a bone fracture because the opinion is both "improperly speculative and contrary to the Ninth Circuit's mandate." (Doc. 320 at 3.) Plaintiff argues that Mr. Kuzel's opinion "invites the jury to reach a factual conclusion contrary to the Ninth Circuit's findings, specifically that the 40mm OC round "amounted to force which has the capability of causing serious injury" and that, "even fired from further away, a reasonable juror could conclude that Gomez

should have appreciated the risk of serious injury." (*Id.*; *see* Doc. 294-1 at 2, 3.) Plaintiff also argues that Mr. Kuzel's opinion lacks reliable methodology under Rule 702(c) because Mr. Kuzel did not perform any tests or biomedical modeling of the impact of the force at issue but instead relied on a single study, which he characterized as reporting only one bone injury from a "37/40mm synthetic projectile." (*Id.*) Plaintiff also argues that Mr. Kuzel's opinion is at odds with the manufacturer's own Product Specification sheet that Kuzel attached to his report, which warns that "[s]hots to the head, neck, thorax, heart, or spine can result in fatal or serious injury." (*Id.*)

The Court is not persuaded that allowing Mr. Kuzel to opine that Defendant could not have reasonably foreseen Plaintiff's bone fracture would invite the jury to relitigate an issue the Ninth Circuit has already decided. Once again, although the Ninth Circuit found that a reasonable juror **could** conclude that Defendant Gomez "should have appreciated the risk of serious injury," this finding reaffirms that whether a reasonable officer in Defendant Gomez's position should have reasonably foreseen this risk under the facts and circumstances known to Defendant Gomez is a question of fact for a jury to decide.

Plaintiff's argument that Mr. Kuzel's opinion is not based on reliable methodology because Mr. Kuzel did not personally perform tests assessing the impact of a 40mm OC round but instead relied on a single study reporting on injuries from a 37/40mm synthetic projectile also goes to the weight, not the admissibility, of Mr. Kuzel's opinion that the fracture Plaintiff suffered in this case was not reasonably foreseeable. Plaintiff does not question Mr. Kuzel's knowledge and expertise in the field of biomechanics, and again, Plaintiff can cross-examine Mr. Kuzel about the bases of his opinion and argue to the jury what weight to give that opinion when assessing the reasonableness of Defendant's use of force. The Product Specification sheet warning that "[s]hots to the head, neck, thorax, heart, or spine can result in fatal or serious injury," while relevant, also does render Mr. Kuzel's expert opinion that Plaintiff's fracture was not reasonably foreseeable unreliable because there is no evidence Plaintiff was shot in any of these body areas. Plaintiff may likewise cross-examine Mr. Kuzel regarding the Product Specification sheet and argue to

the jury the relative weight to give this evidence. The Court will deny Plaintiff's Motion to Preclude Mr. Kuzel's opinion regarding whether Defendant could have reasonably anticipated Plaintiff's injury.

**IT IS ORDERED** granting Plaintiff's Motion in Limine No. 3 (Doc. 320) in part to the extent the Court will preclude Mr. Kuzel from testifying that Plaintiff's HIV or HIV medications weakened his bone density and predisposed him to fractures; the Motion is otherwise denied.

**d. Plaintiff's Motion in Limine No. 4 (Doc. 321); Defendant's Response (Doc. 337)**

Plaintiff's Motion in Limine No.4 is, in effect, three separate motions. Plaintiff seeks an order precluding Defendant from (a) eliciting testimony of Phoenix Police Commanders beyond information communicated to Officer Gomez before or at the time of the May 31, 2020 shooting of Mr. Saccoccio; (b) presenting or eliciting any testimony, evidence, or argument that Lt. Benjamin Moore (or any other defense witness) was personally struck by a 40mm OC impact round and did not sustain serious injury; and (c) eliciting or presenting any evidence from Phoenix Police Commanders[7] that Officer Gomez's deployment of the 40mm OC impact round was reasonable and appropriate. (Doc. 321 at 1.)

**Lt. Moore's Testimony of Events on May 28, 29, 30, and 31, 2020**

Plaintiff argues that, because the Fourth Amendment reasonableness analysis must be based on the facts and circumstances known to Defendant Gomez at the time of his use of force, the Court must preclude as irrelevant any "information observed by Lt. Ben Moore on May 28, 29, 30, and 31, 2020, that was not transmitted to Officer Gomez." (*Id.* at 1−2.) Plaintiff does not object to the Court permitting Lt. Moore to testify about anything he personally communicated to Defendant Gomez, but he says this should be the "outer

[7] Although Plaintiff twice indicates he seeks an Order precluding the testimony of "Commanders," plural, in his Motion, he only specifically discusses Lt. Moore's testimony.

limits" of Lt. Moore's testimony and that such limits, if not enforced, will permit Lt. Moore to "testify for hours or days," as he allegedly has done in other cases. (*Id.*)

Defendant argues that Plaintiff's request is vague and overly broad because it is unclear what information observed by Lt. Moore Plaintiff seeks to exclude. (Doc. 337 at 1.) Defendant also disputes as unfounded Plaintiff's factual basis for requesting the exclusion, arguing that "any observations that Lt. Moore testifies about, Gomez will have had knowledge about" because (1) both Lt. Moore and Officer Gomez were on duty all four nights, so they "observed the same things"; (2) Lt. Moore, along with other officers, relayed anything significant that occurred each night during daily briefings; and (3) Lt. Moore and Officer Gomez heard all the same radio broadcasts all four nights. (*Id.*) Defendant argues that the requested exclusion should be denied and says, "if there are specific questions [Plaintiff] finds objectionable [at trial], he is free to object." (*Id.* at 2.)

The Court agrees as a general proposition that testimony based on Lt. Moore's knowledge and observations that were neither known to nor shared with Defendant Gomez are not relevant under Rule 401 because these facts are not "of consequence" in determining whether the force Defendant Gomez employed was objectively reasonable under the totality of the circumstances known to Defendant Gomez at the time. Fed. R. Evid. 401. It may also be that other testimony, even if admissible under Rule 401, is inadmissible for one or more reasons under Rule 403, such as the risk of unfair prejudice, confusing the issues, or presenting cumulative evidence. Nonetheless, the Court will deny Plaintiff's request to exclude Lt. Moore's testimony for lack of clarity as to what testimony is at issue. Plaintiff baldly claims that "Lt. Moore's percipient observations not transmitted to Officer Gomez should be excluded under Rules 401, 402, and 403." (Doc. 321 at 2.) In doing so, Plaintiff once again seeks to exclude an entire swath of evidence purportedly known to Lt. Moore but not communicated to Defendant Gomez without specifying what this evidence is or explaining why any particular evidence is inadmissible, and without proposing any articulable limits on potentially cumulative evidence. This portion of Plaintiff's Motion in Limine No. 4 is denied.

**Lt. Moore's Personal Experience of Being Struck by a 40mm OC Round**

Plaintiff also seeks to preclude Defendant from eliciting testimony from Lt. Moore regarding his deposition account that he was struck with a 40mm OC round and did not sustain serious injury. (Doc. 321 at 2.) Plaintiff argues that this testimony is inadmissible under Rule 401 because "[t]he reasonableness inquiry [at issue here] turns on the force used against Mr. Saccoccio at approximately 100 feet, not on the experience of a trained officer struck under unknown conditions, in unknown clothing, at an unknown distance, on an unknown body region." (*Id.*) Plaintiff further argues that the anecdote lacks foundation under Rule 602, and that, "[w]ithout foundation as to comparable distance, projectile velocity, target body region, and clothing, the anecdote invites the jury to draw conclusions from non-comparable facts." (*Id.*) Finally, Plaintiff argues that the anecdote is inadmissible under Rule 403 and contrary to the "law of the case" because the Ninth Circuit already determined that the 40mm OC round at issue "amounted to 'force which has the capability of causing serious injury.'" (*Id.*; *see* Doc. 294-1 at 2.)

The Court once again rejects Plaintiff's argument that the Ninth Circuit's factual findings from its review of the summary judgment record establish the "law of the case" and thereby remove these determinations from the jury. The Ninth's Circuit's rulings were based on a limited record construed in Plaintiff's favor and do not preclude the jury from hearing otherwise admissible evidence and making its own determinations at trial. Moreover, Plaintiff misconstrues the Ninth Circuit's conclusion as to the level of force at issue here. The Ninth Circuit stated, with notable qualifications (in bold),

> Gomez knew from his training that if the OC round **is used improperly**, such as by targeting the head or firing at close range, it could cause death. Thus, even fired from further away, **a reasonable juror could conclude** that Gomez should have appreciated the risk of serious injury. Accordingly, **a reasonable juror could conclude** that the use of an OC round in this circumstance amounted to serious force.

(Doc. 294-1 at 3 (Memorandum) (emphases added).) This finding underscores rather than negates the jury's role in making these determinations.

Lt. Moore also demonstrates sufficient personal knowledge to provide foundation for this evidence. Defendant notes that "Lt. Moore testified at deposition that during training, he was struck with a 40 mm impact round (filled with talc powder instead of OC) on his thigh from a distance of 30 to 40 feet – a significantly closer distance than Plaintiff was when he was struck. Lt. Moore further testified that he only sustained bruising from the strike." (Doc. 337.) These statements show Lt. Moore has personal knowledge of the experience and can speak to the basic facts and comparisons at issue. *See* Fed R. Evid. § 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter").

Defendant argues that this evidence is, moreover, relevant to assist the jury in assessing the seriousness of the use of force as well as "whether Officer Gomez should have reasonably anticipated Plaintiff could sustain a fracture if struck in a permissible target area." (Doc. 337 at 2.) Defendant further argues that "Plaintiff is free to cross-examine [Lt. Moore] on the differences between the two scenarios and argue to the jury that the two scenarios are not 'meaningfully comparable,' but that doesn't render the testimony devoid of relevance." (*Id.*) The Court agrees that, with proper foundation, Lt. Moore's experience of being shot in the leg from close range by a 40mm munition fired from the same style weapon Defendant Moore used to hit Plaintiff in the arm with a 40mm munition is, as a threshold matter, relevant to these assessments.

The remaining issue is whether the probative value of this evidence is substantially outweighed by a danger of any of the factors listed under Rule 403, including the risk of unfair prejudice, confusing the issues, or misleading the jury. Plaintiff does not make specific arguments as to any of these factors, but he maintains that, "[w]ithout foundation as to the comparable distance, projectile velocity, target body region, and clothing, the anecdote invites the jury to draw conclusions from non-comparable facts." (Doc. 321 at 2.) As noted, Lt. Moore has personal knowledge to lay the foundation for this evidence and speak to the relevant comparative facts. And because Plaintiff can cross-examine him as to any notable differences and argue to the jury which inferences it should or should not

draw based on these differences, the Court is not persuaded that the evidence lacks foundation or that the probative value of this evidence is substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. This portion of Plaintiff's Motion in Limine No. 4 is denied.

**Lt. Moore's Ultimate-Issue Opinion**

Plaintiff objects to Defendant's stated intention in the Joint Proposed Pretrial Order saying Lt. Moore will testify that "Officer Gomez's deployment of a 40 mm OC impact round toward Plaintiff was reasonable and appropriate based on the totality of the circumstances." (*Id.* at 3.) He argues that "this is expert opinion within the meaning of Rule 702, not lay opinion under Rule 701," and Lt. Moore was neither retained nor disclosed as an expert. (*Id.* at 3.) Defendant clarifies in his Response that he will not be calling Lt. Moore to testify as an expert at trial; instead, Lt. Moore will be testifying as to the applicable policies, training, and procedures, and his testimony will include his opinion that "Officer Gomez's use of force was in accordance with City of Phoenix Police Department policy." (Doc. 337 at 3.) While the Court finds that Lt. Moore can testify about policies, training, and procedures as a lay witness based on personal knowledge, his opinion that Officer Gomez's use of force adhered to the Department's policy is an expert opinion. Indeed, this same opinion is routinely offered by police practices experts. See, e.g., *Silva v. Chung*, 2020 WL 515810, at *18 (D. Haw. Jan. 31, 2020), *aff'd sub nom. Silva v. City and Cnty. of Honolulu*, 851 Fed. App'x 697 (9th Cir. 2021) ("Police practices *experts* may testify as to law enforcement standards and procedures and whether the officers' actions comported with such standards and procedures.") (emphasis added); *Figueroa v. Cnty. of Los Angeles*, 2012 WL 13127809, at *3 (C.D. Cal. Nov. 13, 2012) ("Mr. Chapman is an expert in police procedures and, as such, his expert testimony and opinion shall be limited to whether the purported conducted conformed with police procedures."); *Herrera-Amaya v. Arizona*, 2018 WL 487835, at *5 (D. Ariz. Jan. 19, 2018) (same). Because Lt. Moore was not offered as an expert, he may not opine as to whether Defendant's use of force was in accordance with police policies and practices. He may

testify as a fact witness as previously stated.

**IT IS ORDERED** granting in part Plaintiff's Motion in Limine No. 4 (Doc. 321), to the extent that Lt. Moore is precluded from offering his opinion that "Officer Gomez's use of force was in accordance with City of Phoenix Police Department policy." The Motion is otherwise denied.

**e. Plaintiff's Motion in Limine No. 5 (Doc. 322); Defendant's Response (Doc. 336)**

Plaintiff seeks an Order precluding Defendant "from offering any evidence, testimony, or argument regarding Mr. Saccoccio's marijuana use, including any suggestion that he was under the influence of marijuana on May 31, 2020." (Doc. 319 at 1.) Plaintiff argues that there is no record Plaintiff was impaired at the time of the incident, and to the extent Defendant seeks to introduce evidence of routine marijuana use without evidence of impairment at that time, such evidence is inadmissible character evidence under Rule 404(a). (*Id.* at 1−2.)

Defendant argues that Plaintiff's medical records indicate he is a daily marijuana user, and when confronted with this evidence at deposition and asked if he smoked marijuana on May 31, 2020, Plaintiff stated he did not remember, but he acknowledged it was "possible" he had. (Doc. 336 at 1−2.) Additionally, email exchanges between him and his close friend Rebeka Young, including on May 29, 2020, discuss getting high before participating in protests. (*Id.* at 2.) Defendant argues that this evidence is probative because a jury could reasonably infer from these facts that Plaintiff used marijuana on May 31, 2020, and was high at the time of the use-of-force incident. (*Id.*) Defendant argues this evidence is also relevant because it "bears directly on multiple disputed issues, including Plaintiff's perception, memory, judgment, physical coordination, decision-making, pain perception, and claimed damages." (*Id.*) Defendant notes that Plaintiff initially alleged he was shot by a projectile at "point blank range," not from 100 feet away, and that he waited 3 to 4 hours for medical attention, both of which are entirely untrue. (*Id.*) Defendant argues that, because "Plaintiff's version of events differs in many respects

from that of Officer Gomez," a jury should be able to consider whether his marijuana use impaired his ability to accurately perceive and recall both the incident and what happened afterwards. (*Id.*)

Defendant further argues that Plaintiff's daily marijuana use is relevant to damages, including to Plaintiff's claims of pain and suffering, because marijuana is widely known as an analgesic that can dull pain sensitivity, so a jury is entitled to consider Plaintiff's marijuana use to assess his credibility if he testifies to having severe pain after the incident. (*Id.* at 3.) Defendant relatedly argues that Plaintiff's marijuana use raises credibility issues about his claimed future damages, including his alleged loss of enjoyment of life, because "it is clear from his text message exchanges with Ms. Young that his daily marijuana use is an integral part of his life and is what brings substantial enjoyment to his life." (*Id.*) Defendant refers to Plaintiff's post-incident text messages with Ms. Young, which discuss getting high prior to many different activities, including roller blading, watching fireworks, attending protests, and eating out, to argue that Plaintiff's "most enjoyed activity [i.e. marijuana use] was not hindered as a result of the injury he sustained on May 31, 2020." (*Id.*) Defendant maintains that this evidence "is not offered to portray [Plaintiff] as a bad person or to suggest propensity," and he argues that the probative value of this evidence is not substantially outweighed by any risk of unfair prejudice under Rule 403 because Arizona voters legalized the recreational use of marijuana in 2020, and prospective voters views on marijuana can be explored during voir dire.

Notwithstanding the legality of recreational marijuana use, the Court finds that admitting evidence of Plaintiff's regular marijuana use without any direct evidence he used marijuana on May 31, 2020 and was impaired at the time of the use of force would be highly prejudicial and violate Rule 404(b)'s dictates that "[e]vidence of any other crime, wrong or act is not admissible to prove a person's character in order to show that on a particular occasion [he] acted in accordance with the character." Fed. R. Evid. 404(a)(1). The Court is also not persuaded that this evidence, especially given is speculative nature, is particularly probative of Plaintiff's credibility concerning his perceptions of the incident

or his pain and suffering. To the extent some of Plaintiff's factual claims about the incident are rebutted by other facts and evidence on the record, Defendant can make this showing based on contrary evidence in the record without inviting the jury to speculate from indirect character evidence whether or to what extent Plaintiff's perceptions may have been impaired by marijuana use.

It is also difficult to see how the unknown analgesic effect of an unproven and indeterminate—if any—quantity of marijuana in Plaintiff's system at the time of his injury is probative of the amount of pain and suffering Plaintiff may have experienced. Defendant appears to argue that, presented with evidence that he regularly used marijuana, a jury could reasonably infer Plaintiff was unable to experience significant pain. (*See* Doc. 336 at 3.) Given that this inference is not grounded in any facts or evidence on the record, the purported probative value of introducing Plaintiff's marijuana use for this purpose is low and is, moreover, intrinsically linked to the introduction of improper character evidence. The probative value of Plaintiff's continued marijuana use to discredit Plaintiff's claims of loss of enjoyment of life on the ground that "Plaintiff's daily marijuana use is an integral part of his lifestyle and enjoyment of life activities" (Doc. 336 at 1), is similarly improper under 404(a), and any probative value of this evidence is substantially outweighed by the risk of unfair prejudice under Rule 404(b). Accordingly, Defendant is precluded from introducing this evidence.

**IT IS ORDERED** granting Plaintiff's Motion in Limine No. 5 (Doc. 322).

**f. Plaintiff's Motion in Limine No. 6 (Doc. 323); Defendant's Response (Doc. 336)**

Plaintiff seeks an Order precluding Defendant Gomez from "arguing spoliation, or requesting that the jury draw an adverse-inference instruction, regarding the cell phone Mr. Saccoccio possessed on May 31, 2020." (Doc. 323 at 1.) Plaintiff argues that he produced extensive screenshots of text messages in response to Defendant's discovery request, and Defendant has not identified any relevant cell phone data within the scope of discovery he failed to produce. (*Id.*) Plaintiff also argues that he lacked the requisite intent to deprive

Defendant of responsive evidence that would permit an adverse-inference instruction under Rule 37(e)(2) and that Defendant cannot show prejudice because Plaintiff produced relevant text messages, and Defendant had this evidence for four years but did not file a Rule 37 motion or identify what, if any, material evidence existed on Plaintiff's phone that was lost when the phone was replaced. (*Id.* at 2.)

The pertinent facts, as presented by Defendant, are as follows: on June 23, 2021, Defendants served a request for production on Plaintiff requesting, "[c]opies of all text messages and emails you have received, sent and/or exchanged with any individual regarding this incident from May 31, 2020 through the present." (*Id.* at 1.) On August 9, 2021, Plaintiff objected to the request as unduly burdensome but stated he was in the process of collecting responsive text messages and emails and would produce them promptly upon completion of that process. (*Id.* at 1−2.) In a supplemental disclosure on January 24, 2022, Plaintiff produced screenshots of some text messages but gave no indication these were all the responsive text messages, and many of the screenshots did not have dates and were cut off or otherwise difficult to read. (*Id.* at 2, 3.)

At Plaintiff's deposition eight days later, on February 1, 2020, Plaintiff testified that he no longer had the iPhone he had on May 31, 2020; he did not know when he got a new iPhone; and he did not remember if he transferred everything from his old iPhone to his new iPhone and said, "there might have been a glitch." (*Id.*) He also said that, when he filed this action, and when he took the screenshots, he still had the old iPhone, and it was still working, but then it "broke," and he guessed his partner traded it in. (*Id.* at 2−3) When shown the screenshots he had produced and asked when he created them, Plaintiff answered, "I don't remember," and he said there was nothing he could look at that would refresh his recollection. (*Id.*) When questioned further, he said he did not remember if the old iPhone stopped working, and he admitted he took no steps to preserve the iPhone or download the messages from that phone to his new phone. (*Id.*)

Defendant clarifies that he is not seeking sanctions under Rule 37 (Doc. 338 at 3), so the Court will deny this part of Plaintiff's Motion to Exclude as moot.

Defendant maintains, however, that "nothing in Rule 37(e) renders evidence of the underlying destruction irrelevant or inadmissible," and he argues that evidence showing Plaintiff failed to preserve relevant text messages and then attempted to conceal this fact when responding to discovery "bears directly on Plaintiff's credibility." (*Id.*) Defendant argues that credibility evidence is relevant under Rules 401 and 402 and is admissible under Rule 608(b), which permits cross examination on conduct that is probative of a witness's character for truthfulness or untruthfulness. (*Id.*) Defendant also argues that exclusion is not required under Rule 403 because the evidence is highly probative. (*Id.*) He argues that text messages are unavailable due to Plaintiff's conduct, and because this conduct shows a character for untruthfulness, it is probative of the reliability of Plaintiff's account of disputed events. (*Id.*)

Plaintiff's Motion specifically seeks to preclude an adverse inference instruction under Rule 37 and does not address whether any of the above evidence, if produced to show Plaintiff's character for truthfulness, is admissible under Rule 401 and 608(b) or whether the probative value of this evidence is substantially outweighed by the risk of unfair prejudice under Rule 403. The Court cannot rule on this issue without additional argument or evidence, so it will direct the parties to come prepared at the Final Pretrial Conference to address whether Defendant should be precluded from presenting this evidence for the limited reasons stated in Defendant's Response.

## III. Defendant's Motions

### a. Defendant's Motion in Limine No. 1 (Doc. 308); Plaintiff's Response (Doc. 339)

Defendant seeks an Order precluding Plaintiff from introducing "evidence and/or argument regarding any investigation conducted of [Defendant][.]" (Doc. 308 at 1.) Specifically, Defendant refers to attached exhibits 26 and 27. (*Id.*) Exhibit 26 is a City of Phoenix Internal Investigation Report relating to a November 2015 off duty act of misdemeanor domestic violence committed by Defendant. (Doc. 308-1.) Exhibit 27 is a related Professional Standards Bureau Report outlining the actions taken upon Defendant

following a sustained finding of unprofessional conduct, including suspension. (*Id.*) Defendant seeks to preclude this evidence as violative of Rules 401, 402, 403 and 404(b).

Plaintiff agrees "that the prior domestic violence act would be inadmissible for the purpose of depicting him as having a generally violent character." (Doc. 308 at 2.) However, Plaintiff asserts that the evidence is admissible under Rule 404(b) to show intent and absence of mistake. (Doc. 339 at 2.) Plaintiff states that the evidence is relevant to the allegations here because, when law enforcement responded to the domestic violence incident, Defendant "immediately claimed self-defense–he detailed facts and events in which his safety was threatened and that required him to act only to protect himself." (*Id.*) Plaintiff offers that "how [Defendant] accounted for [his acts]" is probative of the whether his "stated justifications for shooting [Plaintiff] . . . reflect a genuine contemporaneous perception or a rationale assembled after the fact." (*Id.*) Plaintiff also states that it is relevant on the question of damages "if Defendant asserts good faith or honest mistake." Acknowledging its prejudicial effect, Plaintiff explains that any Rule 403 prejudice can be minimized by this intended limited use.

The Court finds that admitting evidence of the Defendant's domestic violence incident, arrest, and suspension occurring five years prior to the incident here would be highly prejudicial and violate Rule 404(b)'s dictates that "[e]vidence of any other crime, wrong or act is not admissible to prove a person's character in order to show that on a particular occasion [he] acted in accordance with the character." Yet, the evidence may be used to show "motive opportunity, intent, preparation, plan or knowledge . . . absence of mistake or lack of accident." Fed. R. Evid. 404(b)(2). Even as proposed by Plaintiff, the Court finds it difficult to see the relevance of the Defendant's explanation of a domestic violence act occurring under much different circumstances to his perceptions and explanation of the need for force here. The Court agrees that the domestic violence incident "is wholly unrelated to police crowd control, deployment of less-lethal munitions, protest enforcement," and the overall circumstances of this case. (Doc. 308 at 3.) And its probative value about how the Defendant acted at the time, is outweighed by the danger of

unfair prejudice to the Defendant. Fed. R. Evid. 404(b). Accordingly, Plaintiff is precluded from introducing evidence contained in Exhibits 26 and 27. (Doc. 308-1.)

**IT IS ORDERED** granting Defendant's Motion in Limine No. 1 (Doc. 308).

**b. Defendant's Motion in Limine No. 2 (Doc. 309); Plaintiff's Response (Doc. 340)**

Defendant seeks an Order precluding the Use of Force Report (the "Report") authored by Sgt. Bochorski, Defendant's supervisor. (Doc. 309.) Defendant says the Report is inadmissible hearsay under Rules 801(c) and 802. Further, Defendant states that the author was not present and "it is unknown where he obtained the information that was included in the report," which contains check box explanations. (*Id.* at 2.) Defendant also explains that Plaintiff never disclosed Sgt. Bochorski as a witness and he is not being called to testify.

Plaintiff asserts that the Report is admissible as a record of regularly conducted activity under Rule 803(6) and (8), which can be authenticated by the Police Department's custodian of records. (Doc. 340 at 2.) Plaintiff further states that the Report is admissible because Defendant, when deposed, "confirmed entry after entry as accurate- that he did not use his firearm, that no impact weapon, canine, chemical spray, or hand technique was used, and that the force was the 40mm OC round, agreeing that "all" of those entries are correct." (*Id.* at 3.) Plaintiff argues that this is a party admission, and adoption of entries in the Report make them admissible against him. (*Id.*) Plaintiff also asserts that a supplemental report prepared by Defendant to "document what [he] did" is admissible as Defendant's "own statement. offered against him." (*Id.*)

The Court finds that to the extent that the Defendant agreed with the specific aforementioned statements as documented in the Report, they are admissible under Rule 801(d)(2)(A) and (B) because he is a party opponent and the statements were "adopted or believed" to be true as confirmed under oath. However, the Report itself is inadmissible as it appears to include other hearsay statements for which no foundation can be laid and

no witness has been noticed to appear.[8] (*See* Doc. 288 at 10, n.2) (discussing the same Report). Accordingly, Defendant's adopted and/or agreed-to statements contained in the Report are admissible as a party opponent's statement.

**IT IS ORDERED** denying Defendant's Motion in Limine No. 2 (Doc. 309).

**c. Defendant's Motion in Limine No. 3 (Doc. 310); Plaintiff's Response (Doc. 341)**

Defendant seeks an Order excluding photographs and any other evidence regarding a challenge coin. (Doc. 310.) Plaintiff's Exhibit 11 is a photograph of a challenge coin which "depicts a caricature of a protestor being struck in the groin by a less lethal munition at an August 2017 protest." (*Id.* at 2.) Plaintiff asserts that the challenge coin "is direct evidence of two things squarely at issue: the bias of the defenses' central eyewitness, and the state of mind that governs punitive damages. (Doc. 341 at 1.)

Plaintiff explains that Sgt. McBride is a central witness and he was the lead training sergeant for the Tactical Response Unit ("TRU"). (*Id.*) Defendant was a grenadier in the TRU, and the TRU created the coin "to celebrate" a protest-related incident that occurred in August 2017. (Doc. 310 at 1.) Sgt. McBride supervised Defendant at the time of the incident at issue here, and he was present when it occurred. And "he was the only supervisor with actual knowledge of [Defendant's] claim that he shot [Plaintiff] in defense of others." (Doc. 341 at 2.) Plaintiff asserts first that "McBride's overt embrace of the coin's logo . . . and his conduct leading [Defendant's] team that night, bear directly on the weight a jury should give his account." (*Id.*). Second, Plaintiff states that the challenge coin goes to Defendant's state of mind on punitive damages. (*Id.*)

The Court finds that the existence of a challenge coin is irrelevant to the single claim to be tried – whether Defendant used excessive force on Plaintiff. Fed. R. Evid. 401. The

---

[8] Furthermore, Plaintiff does not explain the content of the Defendant's supplemental report, only that he prepared one. So, the Court has insufficient information to determine whether its contents are relevant to the claim here, or if it includes prejudicial content. Plaintiff must be prepared to provide the Court with the specific portions of the supplemental report it intends to introduce at the Final Pretrial Conference. *See* Fed. R. Evid. 103(a).

coin's first proffered use is not probative of that claim. That Sgt. McBride possessed the coin has no bearing on Defendant's intent or state of mind in deploying the impact munition. *See Puente v. City of Phoenix*, 2022 WL 357351, at *8 (D. Ariz. Feb 7, 2022) ("While possessing this coin commemorating the injury of a protestor is unseemly at best, it is not sufficiently probative of purpose to harm class members at the time of the protest"). Moreover, given Defendant is not alleged to himself possess the coin makes its relevance even more tenuous to the claim to be tried. Plaintiff's reliance on *United States v. Abel*, 469 U.S. 45 (1984) is misplaced. In *Abel*, the Supreme Court reiterated "[i]t is settled law that the government may not convict an individual merely for belonging to an organization that advocates illegal activity . . . , [r]ather, the government must show that the individual knows of and personally accepts the tenets of the organization. Neither should the government be allowed to impeach on the grounds of mere membership, since membership, without more, has no probative value. It establishes nothing about the individual's own actions, beliefs, or veracity." *Abel*, 469 U.S. 45, 48 (citations omitted). Plaintiff's introduction of the coin seeks to do just that – to show that because Defendant was a TRU member, and his sergeant possessed the coin, then by association, Defendant has a "reckless or malicious mental state." Rule 403 counsels against this because the prejudicial effect of the challenge coin far outweighs its probative value on whether Defendant used excessive force. Accordingly, Plaintiff is prohibited from introducing or mentioning it at trial.

**IT IS ORDERED** granting Defendant's Motion in Limine No. 3 (Doc. 310).

**d. Defendant's Motion in Limine No. 4 (Doc. 311); Plaintiff's Response (Doc. 342)**

Defendant seeks an Order precluding Plaintiff from using Exhibit 28 (aerial photographs) and Exhibit 29 (street photographs). Defendant asserts that Plaintiff "did not disclose [the exhibits] in advance of [his] deposition and has never disclosed when the photographs were taken or a witness who would testify about them." (*Id.* at 2.) Thus, he argues they are irrelevant to the allegation. Defendant further asserts that they are

prejudicial because "the photographs . . . do not depict the property as it existed on May 31, 2020 with a residential structure on it[.]" Therefore, their use could lead to confusion or mislead the jury.

Plaintiff states that Exhibit 28 and 29 are Google aerial and street-level images depicting the alley, the fence, and the distance between him and the officer who shot him. Further, Plaintiff states that Defendant himself testified that the images "fairly and accurately" depict the area involved but "there are some differences with respect to the structures." (Doc. 342 at 2.)

The Court finds that Exhibits 28 and 29 meet the threshold foundation for admissibility under Fed. R. Evid. 901(a) because the they are what the proponent claims they are – depictions of the *general* area where the events took place. However, as to Exhibit 29, showing the property without a residential structure on it, Defendant testified that "there are some differences with respect to the structures," and he explains "that he does not know when the photographs were taken . . and the residential structure that had been there on May 31, 2020 had since been removed and the property has since been subdivided." (Doc. 311 at 3.) The introduction of Exhibit 29, while meeting the threshold 901(a) bar, may mislead the jury and prejudice the Defendant because it does not accurately depict the residential structure central to his claimed defense. *See* Fed. R. Evid. 403. While responding to the group of running protestors, Defendant focused his attention solely on Plaintiff who was trying to reach the other side of the residential fence, when he fired the OC impact round. (Doc. 288 at 9.) And others observed two people trying to jump the fence into the residences yard. (*Id.* at 10.) Defendant has continuously claimed that he acted to prevent Plaintiff from entering residential property, which is not depicted in Exhibit 29. Thus, Exhibit 29 is not probative of Plaintiff's claims or Defendant's defenses, and it is therefore inadmissible. Accordingly, Plaintiff may use Exhibit 28 but is precluded from introducing Exhibit 29.

**IT IS ORDERED** granting in part, Defendant's Motion in Limine No. 4. The Motion is granted as to Exhibit 29 (Doc. 311).

**e. Defendant's Motion in Limine No. 5 (Doc. 312); Plaintiff's Response (Doc. 343)**

Defendant seeks to preclude Plaintiff from having Police Practices Expert Lon Bartel testify as to his opinions relating to the 40 mm launcher used by Defendant. (Doc. 312 at 2.) Defendant asserts that Mr. Bartel's opinions are not based on sufficient facts or data, and he has no training or operation experience with crowd control or arrest team procedures. (*Id.* at 2–3.) Generally, Defendant seeks to preclude Bartel from testifying as an expert under Rule 702. Plaintiff argues that all areas of Mr. Bartel's testimony are "quintessential subjects for cross-examination, not exclusion. (Doc. 343.)

Here, Defendant argues that Mr. Bartel is not qualified by training in the relevant areas, his analysis of the *Graham v. Connor* factors does not take into account the totality of circumstances, and his opinions are not based on sufficient facts or data. *See Graham*, 490 U.S. at 397 (the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.) (citations omitted). Further, Defendant asserts that Mr. Bartel's opinions amount to impermissible legal conclusions. (Doc. 312 at 3.)

Plaintiff asserts that Defendant's objection is premature. The Court disagrees. First, the Court is obligated to preserve its judicial resources (which include managing its jury trials). The Court is also obligated to first assess whether the proffered expert testimony is valid and whether the reasoning or methodology can properly be applied to the facts at issue. Therefore, the Court will make an out-of-jury determination on whether Mr. Bartel qualifies as an expert under Rule 702, and whether his conclusions and opinions rest on "sufficient facts or data" and "reliable principles and methods," and "the witness has reliably applied the principles and methods to the facts of the case."

Accordingly, Plaintiff's will produce Mr. Bartel as a witness subject to examination on his qualifications and opinions at a time to be set by the Court.

**IT IS ORDERED** reserving the Court's ruling on Defendant's Motion in Limine

No. 5 (Doc. 312) until such time as the Defendant produces its proffered expert for examination.

**f. Defendant's Motion in Limine No. 6 (Doc. 325); Plaintiff's Response (Doc. 344)**

Defendant seeks an order precluding Plaintiff from presenting evidence of "certain lesson plans that were disclosed by the City of Phoenix" which are listed in Plaintiff's trial Exhibits 2–5, 8, 10, and 11. (Doc. 325 at 1). Defendant generally says that he is familiar with some, but not all of the lesson plans, some were created after the date of the incident, and others have no relevance to the issue at trial. (*Id.* at 1–2.)

Plaintiff agrees to withdraw the two exhibits created after May 2020 (Exhibits 10 and 11) and will accordingly be precluded from their admission at trial. (Doc. 344 at 2.) Defendant asserts that he recalled being taught from some training plans and not others. (Doc. 325 at 2.) For example, he stated he did not believe he took the Exhibit No. 2, Urban and Open Area Engagements course, and it does not appear on his training record. (*Id.*) Similarly, he did not recall taking Exhibit No. 4, SAU Deployment of Less Lethal Multi-Launcher System, as he believed it was for a different weapon system. (*Id.*) It is unclear to the Court how questioning the Defendant about a course he did not take or is unfamiliar with is probative of the issue at trial.[9] Moreover, permitting Plaintiff to present these plans would strain judicial and jury resources. However, to the extent that the Defendant recalled attending other training sessions, whether or not they have been updated, the Court agrees with Plaintiff that the lesson plans are probative of his training and bear on whether his use of force was objectively reasonable. (Doc. 344 at 1.) However, Plaintiff must lay the appropriate foundation for the admissibility of relevant parts of the lesson plans included in Exhibits 3, 5, and 8. Plaintiff is precluded from introducing Exhibits 2, 4.

**IT IS ORDERED** granting, in part, Defendant's Motion in Limine No. 6 (Doc. 325). The Motion is granted to preclude Plaintiff's use of Exhibits 2 and 4.

---

[9] This is especially so given that the City of Phoenix has been dismissed from this case.

**g. Defendant's Motion in Limine No. 7 (Doc 326); Plaintiff's Response (Doc. 347)**

Defendant seeks an Order precluding Plaintiff from introducing medical testimony about causation, specifically "whether the impact of the OC impact round with Plaintiff's body caused his fracture." (Doc. 326 at 1.) Defendant asks that neither Dr. Yao nor Dr. Dehghan be permitted to testify regarding causation – i.e., that his fracture was caused by the OC impact round. Plaintiff states that Dr. Dehghan's medical records state that Plaintiff suffered a "an outside-in injury with penetrating injury with an open wound . . . which probed down to the bone. He has undisplaced fracture of the radial shaft." (Doc. 347 at 3.) Dr. Dehghan was Plaintiff's treating physician.[10] Treating physicians are able to testify on what they perceived and did as lay witnesses. *See*, *e.g.*, *Hoffman v. Lee*, 474 Fed. App'x 503, 505 (9th Cir. 2012); *Walker v. United States*, 2024 WL 2208927, at *6 (C.D. Cal. Apr. 18, 2024) ("Plaintiff's treating physician may still be called to testify at trial as a lay witness regarding his own perceptions during his treatment of Plaintiff."); *Bender-Wishart v. United States*, 2020 WL 1531131, at *4 n.2 (D. Or. Jan. 30, 2020) (same). Therefore, Dr. Dehghan may testify as a fact witness as to the extent of Plaintiff's injuries, his treatment and the degree of force that would cause such an injury. However, unless the requisite foundation is laid as to Dr. Dehghan's knowledge and familiarity with the force of the 40 mm OC impact round deployed, she may not testify that it "caused" Plaintiff's injury.

**IT IS ORDERED** granting in part, Defendant's Motion in Limine No. 7. (Doc. 326). The Motion is granted in that Plaintiff is prohibited from having Dr. Dehghan testify that Plaintiff's injury was caused by the 40 mm OC impact round. She may otherwise testify as a fact witness.

**h. Defendant's Motion in Limine No. 9 (Doc. 328); Plaintiff's Response (Doc. 349)**

Defendant seeks an Order precluding any evidence about whether criminal charges

[10] Plaintiff's Response is silent with regard to Dr. Yao so the Court presumes he will not "opine as to the causation of the injury in this incident." (Doc. 326 at 1).

were filed against Plaintiff resulting from the incident and/or the outcome of such charges. Defendant explains that "[b]ecause the constitutional inquiry is confined to what [Defendant] reasonably perceived at the time the force was used, evidence concerning whether [Plaintiff] was later criminally charged or prosecuted . . . is irrelevant under Rule 401 and Rule 402." (Doc. 328 at 2.) The Court agrees.

Plaintiff claims that whether or not he was charged "is an element of [his] emotional damages" and [Defendant] may not brand [Plaintiff] a criminal to justify the shooting (alleging he had participated in a felony riot, among other things)." (Doc. 349 at 1.) First, Plaintiff does not explain how any injury inflicted by Defendant's alleged use of excessive force is tethered to a prosecutor's eventual decision to charge or not charge Plaintiff with any crime. Nothing in the record suggests that Defendant participated in a charging decision or influenced its delay. The probative value of whether or not Plaintiff was charged to Defendant's use of force is tenuous, and its prejudicial effect to Defendant high. "Because the reasons for a district attorney's decision not to pursue criminal charges are myriad, the possibility for unfair prejudice is substantial." *Johnson v. City of Los Angeles*, 2015 WL 12806460, at *3 (C.D. Cal. Oct. 13, 2015) (citations omitted); *see also Borunda v. Richmond*, 885 F.2d 1384, 1389 (9th Cir. 1988) ("The fact that Plaintiffs had been previously acquitted in the criminal case is far removed from establishing whether probable cause existed for their arrests."). However, if Defendant "brands [Plaintiff] as a criminal" beyond stating his observations of Plaintiff's acts that night, Defendant may open the door to its admission.

Plaintiff's additional claim that he was damaged because he suffered emotional stress over the "possibility of being charged" is likewise untethered to the claim to be tried. There is no allegation of communication or collaboration between Defendant and the prosecutor, and Plaintiff never claimed as much. Moreover, introducing evidence of not being charged or prosecuted may confuse the jury because testimony about what type of charges could be filed and considerations of whether or not to charge is irrelevant to the

excessive-use-of-force claim.[11] Finally, introducing the fact that no charges were filed seemingly undercuts Plaintiff's claimed emotional stress damages. Accordingly, no party may introduce evidence that Plaintiff was never charged for the events of May 31, 2020. Plaintiff may introduce such evidence if Defendant opens the door to it, making it probative of his claimed defenses.

**IT IS ORDERED** granting Defendant's Motion in Limine No. 9 (Doc. 328).

i. **Defendant's Motion for Leave to File Under Seal Defendant's Motion in Limine No. 10 (Docs. 329 and 330); Plaintiff's Response (Doc. 351)**

Plaintiff having withdrawn the witness, Defendant's Motion in Limine No. 10 will be denied as moot.

**IT IS ORDERED** granting Defendant's Motion to Seal (Doc. 329), and the Clerk of Court shall file under seal Defendant's Motion in Limine No. 10. Defendant's Motion in Limine No. 10 is denied as moot.

Dated this 18th day of November, 2026.

Honorable Diane J. Humetewa
United States District Judge

[11] For this same reason, the Court does not presently accept Defendant's proposed Non-Model Jury Instructions Nos. 1, 2, 3, and 6 (Doc. 313).